THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | :  3:15-cr-00174 |
| | :  (JUDGE MARIANI) |
| AARON BANGAROO, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

On January 24, 2019, pursuant to a written plea agreement (Doc. 103), Defendant Aaron Bangaroo entered a plea of guilty to various crimes involving the trafficking of narcotics. Presently before the Court is Bangaroo's 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 133). For the reasons set forth below, the Court will deny Bangaroo's § 2255 Motion.

### II. PROCEDURAL HISTORY

On August 18, 2015, a federal grand jury in Scranton, Pennsylvania, returned an indictment (Doc. 1) charging Aaron Bangaroo with various drug and firearm offenses. The indictment included a forfeiture allegation and the following charges:

Count 1: Distribution and Possession with Intent to Distribute Heroin (June 26, 2015), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);

Count 2: Distribution and Possession with Intent to Distribute Heroin, (June 30, 2015), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);

      Count 3: Possession with Intent to Distribute Heroin, (July 1, 2015), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);

      Count 4: Possession with Intent to Distribute Cocaine, (July 1, 2015), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);

      Count 5: Convicted Felon in Possession of Firearms (July 1, 2015), in violation of 18 U.S.C. 922 § (g)(1); and

      Count 6: Possession of Firearms in Furtherance of a Drug Trafficking Crime (July 1, 2015), in violation of 18 U.S.C. § 924 (c).

(*Id.*)

      On September 3, 2015, the Court appointed Federal Public Defender Ingrid S. Cronin to represent Bangaroo. (Doc. 12.) On September 29, 2015, Cronin withdrew as counsel for Bangaroo (Doc. 21) and attorney Andrew J. Katsock was retained by Defendant to represent him. (Doc. 20.) On January 16, 2018, Katsock withdrew as counsel for Bangaroo,[1] and attorney George P. Skumanick, Jr., entered his appearance as Defendant's counsel. (Doc. 87.) Skumanick remained Bangaroo's counsel throughout the remainder of the plea agreement process.

      On January 24, 2019, pursuant to a written plea agreement (Doc. 103), Bangaroo entered a plea of guilty as to Counts 3 and 6 of the indictment. Following the death of Mr. Skumanick, attorney Joseph S. Toczydlowski, Jr., entered his appearance as counsel for Bangaroo. (Doc. 113.)

---

[1] Although Attorney Katsock is presently representing Bangaroo as it relates to the § 2255 petition addressed herein, the Court notes that he has not formally re-entered his appearance on the record.

On January 6, 2020, Bangaroo was sentenced to a term of 75 months in prison, with a four-year term of supervised release to follow. (*See* Doc. 127.)

On December 19, 2021, Bangaroo, acting *pro se*, filed the present Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. 133.) Katsock thereafter filed a Notice of Election on Bangaroo's behalf and a Reply brief to the Government's brief in opposition to Bangaroo's habeas petition. (Docs. 137, 142.) On November 16, 2023, Bangaroo filed an Emergency Motion for a Stay of Deportation or Removal Pending the Court's Decision on the 28 U.S.C. § 2255 Motion of the Petitioner/Defendant, Aaron Bangaroo. (Doc. 145.)

### III. STANDARD OF REVIEW

#### *a. 28 U.S.C. § 2255*

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or

otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

4

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

*Id.* at 545-46. Generally, the petitioner bears the burden of proof in § 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised for the first time on collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht*

5

v. Horn, 485 F.3d 103, 127 (3d Cir. 2007) (citing Strickland, 466 U.S. at 689–92). For the first prong, Strickland emphasizes that a court's evaluation of an attorney's performance must be "highly deferential" so as to diminish "the distorting effects of hindsight." Strickland, 466 U.S. at 689. To establish prejudice under Strickland's second prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner bears the burden of establishing that counsel's performance was constitutionally inadequate and prejudiced the defense. Marshall v. Hendricks, 307 F.3d 36, 89 (3d Cir. 2002). In asserting prejudice, the petitioner must show more than a conceivable likelihood that the outcome would have been different.

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See Wong v. Belmontes, 558 U. S. [15] (2009) (per curiam) (slip op., at 13); Strickland, 466 U. S., at 693. Instead, Strickland asks whether it is "reasonably likely" the result would have been different. Id., at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697. The likelihood of a different result must be substantial, not just conceivable. Id., at 693.

Harrington v. Richter, 562 U.S. 36, 112–113 (2011).

## IV. ANALYSIS

Bangaroo's § 2255 Motion seeks relief on the basis that he received ineffective assistance of counsel. (Doc. 133.) Bangaroo sets forth one ground for relief alleging that he was not properly informed that his guilty plea would potentially subject him to deportation. (*Id.*) The Court will first address the untimeliness of Bangaroo's Motion because it can be dismissed on that basis alone. The Court will then evaluate the merits of Bangaroo's alleged basis for relief, assuming, *arguendo,* that his Motion was timely.

### A. Timeliness of Bangaroo's § 2255 Motion

The parties dispute whether Bangaroo timely filed his § 2255 Motion within the one-year statutory requirement. The Government contends that Bangaroo failed to do so and therefore his § 2255 Motion should be dismissed. (Doc. 139 at 3-4.) Bangaroo argues that he had no reason to contest his plea agreement until the Government attempted to deport him and thus his § 2255 Motion was timely filed. (Doc. 142 at 4-5.) For the reasons explained below, the Court concludes that Bangaroo's § 2255 Motion was not timely filed and therefore can be dismissed on this basis.

Section 2255 outlines the time limit for filing a motion under the statute:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

    (1) the date on which the judgment of conviction becomes final;

    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United

> States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

As explained herein, *infra*, the record clearly reflects that Bangaroo was aware of the immigration consequences that could result from a guilty plea both before he entered his guilty plea as well as at the time he pleaded guilty before this Court. As detailed below, Bangaroo was informed by the Court, the Government, and his counsel on various occasions throughout the plea agreement process that there was a possibility he would be deported if he pleaded guilty. (*See* Doc. 103 at 22; Doc. 135 at 14-15, 19-20.) Because Bangaroo's Motion was filed on December 19, 2021, almost two years after January 20, 2020, the date on which the judgment of conviction became final, and there are no facts supporting any of the other statutory bases found in 28 U.S.C. § 2255(f) for considering the Motion, it is evident that Bangaroo's habeas petition is untimely and it will accordingly be denied on this basis.

Nonetheless, assuming *arguendo* that Bangaroo had timely filed his Motion, the Court would nonetheless reject his claim for relief on the merits for the reasons explained below.

### B. Ineffective Assistance Relating to Bangaroo's Plea Deal

The parties principally dispute whether Bangaroo was informed that his guilty plea would potentially subject him to deportation. In Bangaroo's § 2255 Motion, he contends that his "plea of guilty was unknowing, based upon false information and therefore, involuntary" and that he "would not have pled Guilty if my attorney advised me that I would or could be deported." (Doc. 133 at 4.) The Government contends that there is ample evidence in the record that Bangaroo was informed that his guilty plea may have immigration ramifications and may result in his deportation. (Doc. 139 at 17-22.) For the reasons explained below, the Court agrees with the Government and finds Bangaroo's arguments to be without merit.

To comport with the Fifth Amendment, a defendant's plea must be voluntary and intelligent. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). To satisfy *Strickland*'s "objective standard of reasonableness" with respect to a plea, 466 U.S. at 688, an attorney must "give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer'", *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, 571 U.S. 1224 (2014). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Attorneys have a responsibility under the Sixth Amendment of the United States Constitution to advise their clients of the advantages and disadvantages of a guilty plea.

*See Padilla v. Kentucky*, 559 U.S. 356, 370, 373 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50-51 (1995)). This duty pertains primarily to direct consequences of a guilty plea, but in *Padilla*, the United States Supreme Court extended it to the seemingly collateral consequences of deportation. *See id.* at 366, 373-74; *see also id.* at 375-76 (Alito, J. concurring). The Court reasoned deportation "uniquely" could not be classified as either a direct or collateral consequence of a guilty plea because it bears such a "close connection to the criminal process" and is often "an automatic result" of a guilty plea. *See id.* at 366. Hence, as the Supreme Court concluded, "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Padilla*, 559 U.S. at 366.

Here, Bangaroo contends that his defense counsel at the time, Attorney Skumanick, "orally assured me that I pled Guilty to the Government's plea offer that I would not be deported" and that "[b]ased on his assurances, guarantees and advice I agreed to plead Guilty." (Doc. 133 at 4.) As the Government correctly points out (Doc. 139 at 17-20), there is ample evidence in the record demonstrating that Bangaroo was repeatedly advised of the possible immigration consequences of his guilty plea.

First, Bangaroo's plea agreement, signed by both Bangaroo and Attorney Skumanick, shows that he was put on notice as to the possible immigration consequences of his guilty plea. Paragraph 28 of the plea agreement explicitly informed Bangaroo that deportation may be a consequence of his guilty plea:

10

### J. Deportation

28. <u>Deportation/Removal from the United States.</u> The defendant understands that, if defendant is not a United States citizen, deportation/removal from the United States is a possible consequence of this plea. The defendant further agrees that this matter has been discussed with counsel who has explained the immigration consequences of this plea. Defendant still desires to enter into this plea after having been so advised.

(Doc. 103 at 22.) By signing his plea agreement, Bangaroo affirmed that he had "discussed this case and this plea agreement in detail" with his attorney, and that he was "satisfied with the legal services and advice" his attorney provided. (*Id.* at 24-25.) He also confirmed that his counsel had:

> advised [him] of [his] Constitutional and other trial and appeal rights, the nature of the charges, the elements of the offenses the United States would have to prove at trial, the evidence the United States would present at such trial, possible defenses, the advisory Sentencing Guidelines and other aspects of sentencing, potential losses of civil rights and privileges, and other potential consequences of pleading guilty in this case.

(*Id.* at 24.) In addition, Bangaroo acknowledged in the plea agreement that he had "read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." (*Id.* at 25). Nor can Bangaroo claim that he was unable to understand English, as he confirmed to the Court that he can read and write in English during his guilty plea colloquy. (Doc. 135 at 7:4-10.)

Second, this Court's colloquy of Bangaroo during his change of plea hearing confirms that he was informed of the possible immigration consequences of pleading guilty. At the plea colloquy of Bangaroo, the Court confirmed that he understood the nature of his

11

plea agreement. (Doc. 135 at 24-26.) At that time, the Court specifically confirmed that Bangaroo had read his plea agreement, understood it, and had spoken with his attorney about the details of the agreement:

> The Court: Okay, Mr. Bangaroo, under the word "Acknowledgements," there are two sentences, and they read, quote, "I have read this agreement and carefully reviewed every part of it with my attorney, I fully understand it and I voluntarily agree to it" end quote.
>
> Then on the next page, the typewritten name Aaron Bangaroo is set forth, and above the typewritten signature, there is a handwritten signature. Whose signature is it?
>
> The Defendant: Above it, my signature, Your Honor.
>
> The Court: Now, before you signed this document, did you read it?
>
> The Defendant: Yes, I went over it.
>
> The Court: Did you discuss it with Mr. Skumanick?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Did you have any occasion to discuss it with Mr. Tocydlowski?
>
> The Defendant: Briefly, today.
>
> The Court: If you had any questions, were they answered to your satisfaction?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Do you have any questions here today about the plea agreement?
>
> The Defendant: No, Mr. Mariani.

(*Id.* at 14-15.)

This exchange demonstrates that Bangaroo confirmed that he read and understood the plea agreement. Bangaroo cannot claim that he was unaware or uninformed that his guilty plea may result in deportation when such a warning was expressly outlined in his plea agreement that he read and reviewed.

Additionally, during the change of plea hearing, the Government placed on the record the relevant portion of the plea agreement relating to the potential for deportation:

> [AUSA O'Hara]: . . . Your Honor, Paragraph 28 on Page 26 [of the plea agreement] does contain a provision regarding deportation and removal from the United States. The Defendant understands that if he is not a United States citizen, that deportation from the United States is a possible consequence of the plea. The paragraph indicates that the Defendant still desires to enter into this plea, after having been so advised.
>
> Your Honor, I can inform the Court that this is an issue in this case, and I was previously informed by Mr. Skumanick that he discussed the possibility of deportation extensively with this defendant.
>
> . . . .
>
> The Court: Mr. Bangaroo, did you listen to Mr. O'Hara outline the essential terms of the plea agreement?
>
> The Defendant: Yes, I did.
>
> The Court: Are the terms of the plea agreement, as outlined and summarized by Mr. O'Hara, the terms as you understand them?
>
> The Defendant: Yes, Your Honor.

(*Id.* at 19-20.)

The transcript thus establishes that Bangaroo both admitted to reading the plea agreement that included the warning regarding possible immigration consequences,

13

understood this agreement, and that he was also verbally reminded of the possible deportation consequences in the hearing itself and confirmed his understanding of these terms of the plea agreement. Bangaroo cannot now credibly claim that his plea was unknowing or involuntary when on multiple occasions he was made aware of the possible immigration consequences he would face by pleading guilty. Every aspect of Bangaroo's claim is contradicted by the record, which establishes that his counsel gave him "enough information 'to make a reasonably informed decision'" to accept his plea, *Shotts*, 724 F.3d at 376 (quoting *Day*, 969 F.2d at 43).

Bangaroo relies on communications sent by Skumanick to suggest that he unknowingly pleaded guilty under the false impression that he would not be deported. Specifically, Defendant relies on a letter sent by Skumanick on January 17, 2019, advising Bangaroo to cooperate with the Government:

> Deal Aaron:
>
> Enclosed please find the Signature Pages for your Plea and Proffer and Plea Addendum. I have enclosed the Proffer for you to review, but do not keep it for security reasons.
>
> I need you to sign them now and get started in cooperating. This will help with any possible Deportation Issue. If Immigration even does anything. I have talked with your Mother she believes this is in your best interest also.
>
> We have discussed this matter at length, I truly believe that this is in your best interest and that you will not be deported, if you follow the Plea and Proffer.

(Doc. 144 at 6.)

14

The contents of this letter establish that Bangaroo was aware of a risk that he may be deported if he entered into a guilty plea. (*See id.* ("This [cooperation] will help with *any possible* Deportation Issue.")) The letter also demonstrates that Skumanick extensively discussed this issue with Bangaroo. (*Id.* ("We have discussed this matter at length.")). Similar to the Third Circuit's conclusion in *Shedrick*, "[t]his case falls well within well-established precedent: defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). The Third Circuit's logic in *Shedrick* applies with equal force to the predictions of Bangaroo's counsel as to possible immigration consequences. *See, e.g., Afolabi v. United States*, No. CV 13-1686 (JLL), 2016 WL 816749, at *10 (D.N.J. Feb. 29, 2016) ("Even if it were true that Petitioner was not informed by counsel of the consequences of his guilty plea, Petitioner cannot show prejudice here because both the plea agreement and this Court at both the plea hearing and sentencing made it abundantly clear that Petitioner faced several collateral consequences as a result of his plea, specifically including potential deportation.") Skumanick's communication of his good-faith belief that Bangaroo would not ultimately be deported is of no legal import in the face of overwhelming evidence that Bangaroo was made fully aware that there was a possibility he would be deported through his guilty plea and plea colloquy (*see* Doc. 103 at 22; Doc. 135 at 14-15, 19-20.)

15

In light of the substantial evidence that Bangaroo was informed by his counsel, the Court, and the Government on multiple occasions of the possibility that he may be deported as a result of his guilty plea, there is no basis by which this Court could conclude that Skumanick "misadvise[d] or fail[ed] to advise [Bangaroo] regarding the immigration consequences of [his] plea", see *Chaidez*, 568 U.S. 342, 353. Nor can Bangaroo successfully meet the first prong of *Strickland*, 466 U.S. at 688, as Skumanick clearly gave Bangaroo "enough information 'to make a reasonably informed decision whether to accept a plea offer'", *Shotts,* 724 F.3d at 376. Bangaroo also conclusively fails to meet the second prong of *Strickland*, as he cannot credibly claim that he would not have pleaded guilty had he been aware of the potential immigration consequences of his plea in light of the clear evidence that he was, indeed, aware of the possibility that he would be deported. *See, e.g., Afolabi*, 2016 WL 816749, at *10. The Court will therefore deny Bangaroo's Motion (Doc. 133) since it is conclusively without merit.

## V. EVIDENTIARY HEARING

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. March 1,

2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, no evidentiary hearing is necessary because "the motion and files and records of this case show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208, at *5 (M.D.Pa. March 1, 2022) (internal quotations and citations omitted)); *see also Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition"); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 300-02 (3d Cir. 1991) (declining to hold evidentiary hearing on petitioner's § 2255 ineffectiveness claim "absent identification of some facts that support a contention of ineffectiveness" because doing otherwise will encourage meritless petitions burdening judicial resources). Here, Bangaroo is not entitled to relief and his allegations rise only to the level of bare assertions that are clearly contradicted by the record.

## VI. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D.Pa. June 8, 2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a COA is not warranted on Bangaroo's claim because

17

the Court finds that reasonable jurists would not find this Court's resolution of Bangaroo's constitutional claim debatable or wrong.

## VII. CONCLUSION

For the aforementioned reasons, the Court will deny Aaron Bangaroo's 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 133). A separate Order will follow.

*[signature]*

Robert D. Mariani
United States District Judge